**COURT OF CHANCERY**
**OF THE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 13, 2023

Devera B. Scott, Esquire
State of Delaware Department of Justice
102 W. Water Street
Dover, DE  19904

Michael W. Teichman, Esquire
Parkowski, Guerke & Swayze, P.A.
1105 North Market Street, 19th Floor
Wilmington, DE 19801

Ryan M. Ernst, Esquire
Bielli & Klauder, LLC
1204 North King Street
Wilmington, DE  19801

> RE:  ***State of Delaware, Department of Natural Resources &***
> ***Environmental Control v. Service Transport Group, Inc., et al.,***
> Civil Action No. 2022-0009-MTZ

Dear Counsel:

Thank you for your September 12, 2023, status update describing the parties' efforts to agree on the timing, necessary measures, and authority for winding down Service Transport Group, Inc's ("STG") asbestos transfer station after STG failed to comply with its environmental regulatory obligations in the time afforded by this Court's preliminary injunction. Under that three-phase preliminary injunction, if STG did not come into compliance within Phase Two as defined therein, "the Court will again enjoin the accepting of new waste at the facility until such time as the Court issues a final judgment resolving this matter ('Phase Three'). During Phase

Three, third party asbestos generators shall be allowed to remove their waste from the facility."[1] We are in Phase Three.

At the most recent hearing in this matter, STG agreed it could no longer operate as a transfer station and requested an opportunity to present a closure plan to DNREC and the Court.[2] I tried to make two points clear: STG had not complied with this Court's preliminary injunction, and STG had lost the opportunity to negotiate with customers who wished to retake their asbestos to fulfill their regulatory obligations.[3] I also asked for a few pieces of information: STG's plan for operations after ending transfer station operations, DNREC's promised "statutory authority" authorizing DNREC to bring in a contractor to clean up the site, and DNREC's statutory or regulatory authority to spend funds held after calling STG's letter of credit.[4]

The terms of Phase Three set forth the consequences for not meeting the obligations imposed in Phase Two. Based on the evidentiary record and the progress

---

[1] Docket Item ("D.I.") 49 at 3–4.

[2] D.I. 100 at 49.

[3] *Id.* at 27–29, 49.

[4] *Id.* at 40–41, 43–44.

the parties have made, I believe additional terms are warranted in Phase Three.  It is

hereby **ORDERED** that STG shall:

1.  Cease accepting new asbestos.

2.  Cease preventing abatement contractors from picking up their waste.

3.  Refrain from engaging in any asbestos handling or remediation for which STG is not currently licensed.

4.  Certify in an affidavit that the Pacific Cargo lease has terminated and set forth the plan for removing its equipment.

5.  Conduct soil and air sampling as the parties agreed in the September 12 letter.  STG is not presently required to perform groundwater sampling.

STG shall keep the Court informed of its progress in the following ways:

1.  Filing weekly reports in the form requested by DNREC in the September 12 letter.  STG shall also serve such reports on DNREC at the time they are filed with the Court.

2.  Providing the Court notice within three business days of entering into a purchase and sale agreement for STG's property.  STG shall also serve any such notice on DNREC at the time it is provided to the Court.

While DNREC moved for contempt, I do not believe that more coercive

sanctions are warranted at this time, for the reasons discussed at argument.  That

said, STG appears reluctant to accept my previous ruling that Phase Three requires

it to permit customers to reclaim their asbestos.[5]  If STG refuses to allow any customer to reclaim their asbestos, the sanction will be a fine of $5,000 customer per day of refusal, payable to the Register in Chancery.

As to the parties' disagreement over the funds DNREC drew from STG's letter of credit, some background is necessary.  DNREC issued STG a waste transfer station permit pursuant to 7 *Del. C.* § 6003.  Title 7, Regulation 1301 of the Delaware Administrative Code obligated STG, as a permittee, to obtain and provide assurance that "financial costs associated with closure, post-closure care, and corrective action could be met."[6]  Among other things,  STG's chosen financial assurance mechanism "must ensure that funds will be available in a timely fashion when needed."[7]  Regulation 1301 mandates that the "mechanisms used to demonstrate financial assurance under this section must ensure that the funds necessary to meet the costs of closure, post-closure care, and corrective action for known releases will

---

[5] *Id.* at 10 (acknowledging that STG will not let customers pick up waste without payment); *id.* at 16 ("[W]e still want an opportunity to work with these . . . recalcitrant customers . . . ."); D.I. 101 at 3–4 ("STG has . . . elected to treat all unclaimed [asbestos] as abandoned and remove it, and pursue such remedies as it has against abatement contractors and generators thereafter.").

[6] 7 Del. Admin. C. §§ 1301-4.1.11.1 to -11.2.

[7] *Id.* § 1301-4.1.11.2.3.2.

be available whenever they are needed."[8]  It also mandates that the amount of funds assured be "sufficient to cover the costs of closure, post-closure care, and corrective action for known releases when needed."[9]  STG provided a letter of credit as financial assurance; on July 12, 2022, the bank informed DNREC that the letter of credit would not be renewed.[10]  STG failed to provide alternative financial assurance within ninety days as required, so, as authorized by Regulation 1301, DNREC drew on the assurance funds.[11]

Now that STG is in the closure process, the parties disagree as to how those funds should be administered.  Their disagreement is understandable:  the regulations appear to be silent on how the funds should be administered once DNREC draws on them.  DNREC seeks to withhold the funds until STG's station is closed and all asbestos has been removed.  STG wishes to have the funds released to it incrementally to cover closure costs.  I fall back on the intentions behind the financial insurance program:  to set aside sufficient funds, and to make them available in a timely fashion when needed to meet the costs of closure.  To meet

---

[8] *Id.* § 1301-4.1.11.2.4.

[9] *Id.* § 1301-4.1.11.2.3.1.

[10] D.I. 97, Ex. A.

[11] 7 Del. Admin. C. § 1301-4.1.11.2.4.3, Condition 8.

these goals, DNREC must make funds available to STG to pay for STG's costs of closure.

STG shall submit a detailed closure plan to the Court, serving DNREC, within twenty days. With that plan in place, STG's proposal that DNREC release funds to STG in the amount of $3,000 per trailer removed appears reasonable and compliant with Regulation 1301.

I hope these terms and additional guidance are sufficient to direct the prompt and compliant closure of STG's asbestos transfer operations. I make no comment today on the propriety of DNREC entering STG's site to take on the work itself, on the hopes that such a measure will not be necessary and that opinion would be advisory. I ask DNREC to provide this Court with thirty days' notice before taking any such measure.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*